UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| THE NEW MEXICO STATE INVESTMENT COUNCIL, as Trustee, Administrator and Custodian of the LAND GRANT PERMANENT FUND and the SEVERANCE TAX PERMANENT FUND,<br><br>Plaintiff,<br><br>vs.<br><br>SAUL MEYER, RENAISSANCE PRIVATE EQUITY PARTNERS, LP d/b/a ALDUS EQUITY PARTNERS, LP, MARC CORRERA, ANTHONY CORRERA, ALFRED JACKSON, DANIEL WEINSTEIN, VICKY L. SCHIFF, JULIO RAMIREZ, BARRETT WISSMAN, WILLIAM HOWELL, MARVIN ROSEN, DANIEL HEVESI, ELLIOTT BROIDY, MILTON ROBERT CARR, and HENRY MORRIS,<br><br>Defendants. | Index No. 1:11-cv-00390-JB |

### DEFENDANT MARC CORRERA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)

Defendant Marc Correra, through his undersigned attorneys, respectfully submits this Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

### I. INTRODUCTION

The Complaint filed by plaintiff The New Mexico State Investment Council ("Plaintiff") must be dismissed for two independent reasons: (1) Plaintiff has failed to

properly serve Marc Correra so therefore the Court lacks personal jurisdiction over him, and (2) the Complaint states no claim against Marc Correra.

## II. BACKGROUND AND FACTS

### 1. "Service" of the Summons and Complaint.

On June 9, 2011, a FedEx mailing envelope was purportedly delivered to the front desk of Mr. Correra's apartment building. *See* Declaration of Marc Correra, attached hereto as Exhibit 1 and hereby incorporated fully by reference, at Exhibit B thereto. The FedEx envelope indicates that it was sent to Mr. Correra by Anita Taylor Malone, Sunbelt Reporting Service, 6575 West Loop South, Suit 580, Bellaire, TX, 77401 who is, upon information and belief, a court reporter and Texas notary public located in a suburb of Houston, Texas. *Id.* at Ex. A. FedEx tracking information indicates that the envelope was signed for by a person named "GERALDO," and Mr. Correra believes that his wife retrieved the envelope from the concierge and brought it up to their apartment. *Id.* at ¶4. He first received the envelope containing the complaint and summons when he found it lying on a table in his apartment. *Id.*

Upon information and belief, Plaintiff has made no other attempts have been made to serve Mr. Correra with the summons and complaint, and no attempts have been made to serve Mr. Correra through governmental or diplomatic channels in France. *See id.* at ¶5.

### 2. The Complaint.

The Complaint includes two causes of action against Marc Correra: aiding and abetting a breach of fiduciary duty (Count III) and unjust enrichment (Count IV). Compl. ¶¶101-107. As discussed below, the complaint is void of any facts supporting these causes of action.

## III. ARGUMENT AND AUTHORITIES.

The Complaint should be dismissed for two separate reasons: it was improperly served on Marc Correra, and it fails to state a claim against Marc Correra.

### 1. The Complaint Should Be Dismissed Because Plaintiff Failed to Properly Serve Marc Correra.

One of the most basic tenets of American civil law is that in order for a court to have personal jurisdiction over a defendant, proper service of process is required. *See Murphy v. Michetti*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (superseded by statute on other grounds). Where service of process is inadequate, as it was here, a case must be dismissed as to the improperly served defendant. *See* Fed. R. Civ. P. 12(b)(2). *See also Omni Capital Int'l, Ltd.*, 484 U.S. 97, 103-108 (1987) (discussing service of process as a requisite for a court's exercise of personal jurisdiction over a defendant.

Federal Rule of Civil Procedure 4 ("Rule 4") dictates the types of service that are permissible for a case pending in federal court. Specifically, Rule 4(f), which governs service on an individual in a foreign country, states in pertinent part that service must be made (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (hereinafter, the "Hague Convention")[1]; (2) by using any form

---

[1] The United States and France are both signatories to the Convention. *See* Hague Conference on Private International Law, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Status Table, http://www.hcch.net/index_en.php?

of mail that the clerk addresses or sends to the individual and that requires signed receipt; (3) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; or (4) by other means which are not prohibited by international agreement, as the court orders. Fed. R. Civ. P. 4(f)(1), (2)(A)&(C)(ii), & (3). Delivering a FedEx envelope signed by a person at the front desk or concierge office of an apartment building, as Plaintiff did here, does not satisfy the service requirements of Rule 4(f), the Hague Convention, or French law, and this Court has entered no orders concerning other permissible means of service upon Marc Correra.

    a.    **Plaintiff's Attempt at Service Did not Comply with the Provisions of the Hague Convention or Rule 4(f)(1).**

Fed. R. Civ. P. 4(f)(1) provides that Plaintiff may serve Marc Correra by the means established by the Hague Convention. Because service of process was attempted upon Marc Correra abroad, the validity of that service is controlled by the Hague Convention, to the extent that the Convention applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 705 (1988) ("[C]ompliance with the Convention is mandatory in all cases to which it applies."). The primary means by which service is accomplished under the Hague Convention is through a receiving country's "Central Authority." The Hague Convention affirmatively requires each member country to designate a Central Authority to receive documents from another member country. *See* Hague Conference on Private International Law, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (hereinafter, the "Convention"), art. 2. The receiving country can impose certain requirements with respect to those documents (for

---

act=conventions.status&cid=17 (last visited Jun. 26, 2011) (France signed January 12, 1967; the United States signed November 15, 1965).

---

example, that they be translated into the language of that country). *See id.,* art. 5. If the documents comply with applicable requirements, the Hague Convention affirmatively requires the Central Authority to effect service in its country. *See id.,* arts. 4 & 5.

Service under the Convention must, in the absence of other orders, be made *through the Central Authority designated by each signatory state* by either (1) employing a method prescribed by its internal law for the service of documents in domestic actions upon person who are within its territory, or (2) by a particular method requesed by the applicant, unless such a method is incompatible with the law of the state addressed. Hague Convention, art. 5 (emphasis added). An exception to these provisions is that the document may always be served by delivery to an addressee who accepts it voluntarily.

Plaintiff's attempted service of Marc Correra wholly failed to comply with the provisions of the Hague Convention. Rather than direct a request for service to the Central Authority designated by France, the summons and complaint were sent directly to Mr. Correra in France from Houston, Texas. Declaration of Marc Correra at Ex. A. Furthermore, Mr. Correra did not voluntarily accept service. *See id.* at ¶4, Ex. B. (Mr. Correra did not sign for envelope; FedEx tracking information indicates it was left at the front desk of Mr. Correra's apartment building).

      **b.**    **The Attempted Service Was Inadequate Under Fed. R. Civ. P. 4(f)(2) and French law.**

Hague Convention expressly does not interfere with the freedom to serve documents through other means, but the means Plaintiff employed still do not comply with Rule 4(f)(2). *See* Hague Convention, art. 10 (declining to interfere or object to service under alternative means than those established by the convention). Outside of the Hague Convention, Rule (f)(2) provides three additional avenues for service: Section 2(A) permits

service as prescribed by the foreign country's law for service in domestic suits; Section 2(B) permits service as the foreign country directs in response to a letter rogatory or letter of request; and Section 2(C) permits service by personal delivery of the complaint and summons or service by any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt.

<u>Fed. R. Civ. P. 4(f)(2)(A)</u>. Rule 4(f)(2)(A) provides that where an international agreement allows but does not specify alternative means of service, service of process may be obtained by those means prescribed by the foreign country's law for service in that county in an action in its courts of general jurisdiction.

The French *Code de Procédure Civile*, however, sets forth service requirements for process originated abroad which occurs outside the procedure established by the Hague Convention. *See* C.P.C., art. 688-1 *et seq.*[2] Specifically, process papers must be addressed to the Minister of Justice, who will then send the papers either to the public minister for the district court for the province where the defendant is located or to the National Chamber for the country's bailiffs (*les huissiers de justice*). C.P.C., art. 688-2. This, in effect, means that the Minister of Justice directs whether process may proceed by mail delivery ("notification") or whether it must proceed by personal service ("signification"). *See* C.P.C., arts. 651, 654, 688-2, 688-3 & 688-4 (if sent to the public minister for the district court, process may be served by delivery; if sent to the bailiffs' chambers, service to be made by signification).

---

[2] The provisions of the code are available in the original French at: http://www.legifrance.gouv.fr/affichCode.do?cidTexte=LEGITEXT000006070716&dateTexte=20110629 (last visited June 29, 2011). The French government has provided an English translation of the *Code de Procédure Civile* at: http://www.legifrance.gouv.fr/html/codes_traduits/ncpcatext.htm (last visited June 27, 2011). With the enactment of article 26 of *Loi n° 2007-1787 du 20 decémbre* 2007, the vestiges of the prior Napoleonic code of civil procedure from 1806 were repealed, and the *Nouveau* ("New") *Code de Procédure Civile* (established by *décret n° 75-1123 du 5 decémbre* 1975), was renamed the *Code de Procédure Civile*.

For both suits originating in France and suits originating abroad, if service is effected by mail, the petitioner must sign the delivery slip in person to be considered validly served; no spouse or other person present at the defendant's domicile can sign the delivery slip and have service be effective. *See* C.P.C., art. 670 (addressee's signature required for notification by mail or personal delivery). If effective service by mail (notification) cannot be accomplished, then process must be served by signification by a bailiff. Only if personal service upon the defendant by a bailiff is impossible may the documents be served by leaving them with another person at defendant's residence, a building caretaker, or a neighbor, and certain other documentary requirements are met. C.P.C., arts. 654-655.

It is clear in this case that Plaintiff did not attempt to follow the service procedures established by the French Code of Civil Procedure, and that the attempted service via FedEx was not valid. First, since Plaintiff attempted to send the summons and complaint directly from the court reporter in Texas to Marc Correra, it failed to comply with the C.P.C. article 688-2 requirement that the documents to be served from suits originating abroad be sent to the French Minister of Justice. *See* Correra Aff. at Ex. A (FedEx mailing label). Second, even if this were a domestic suit in France, the attempted service through notification would not have been effective because Marc Correra did not sign the delivery slip. *See id.* at Ex. 2 (FedEx tracking and delivery information); C.P.C., art. 670. No service by signification has been made, Plaintiff's attempt at service by notification was defective, and therefore French due process requirements have not been satisfied irrespective of whether the suit originated domestically or not.

Because the attempted service of the summons and complaint was wholly inadequate under French law, the provisions of Rule 4(f)(2)(A) remain unsatisfied.

<u>Fed. R. Civ. P. 4(f)(2)(B)</u>. Pursuant to Fed. R. Civ. P. 4(f)(2)(B), service may be effected as prescribed as the foreign authority directs in response to a letter rogatory or letter of request. Upon information and belief, Plaintiff has neither obtained nor transmitted letters rogatory or letters of request to the French authorities. Accordingly, service could not have been effectuated upon Marc Correra pursuant to this section of Rule 4(f)(2) since Plaintiff has failed to initiate the process.

<u>Fed. R. Civ. P. 4(f)(2)(C)</u>. Finally, Rule 4(f)(2)(C) permits service either by personal delivery or by mail addressed and sent by the clerk to the individual being served that requires a signed receipt, unless prohibited by the law of the foreign country. In this case, it is clear that Plaintiff did not have the complaint and summons personally delivered to Marc Correra; rather delivery was made by FedEx to someone named "GERALDO" at Mr. Correra's apartment building front desk. Declaration of Marc Correra, ¶4 & Ex. B thereto. Further, it is equally clear that the clerk did not address and send the complaint and summons to Mr. Correra as the documents were sent from Houston, Texas by a third party. *Id.* at Ex. A. Accordingly, Plaintiff's attempted service upon Mr. Correra is defective under Rule 4(f)(2)(C).

### c. Actual Notice of the Suit Does Not Excuse Proper Service.

Actual notice to a defendant is insufficient to satisfy the requirements of Due Process, and a court is not permitted to excuse defects in service altogether. *See McMasters v. U.S.*, 260 F.3d 814, 817 (7th Cir. 2001) ("...nothing in the [FRCPs] allows a judge to excuse service altogether. Actual notice to the defendant is insufficient; the plaintiff must comply with the directives of Rule 4.") Accordingly, whether Marc Correra ultimately received the summons and complaint following delivery by FedEx to "GERALDO" or anyone else at

his apartment building is immaterial. Unless Mr. Correra was properly served under Rule 4(f) or the Hague Convention, this Court may not exercise personal jurisdiction over him.

### 2. The Complaint Should be Dismissed Because it Fails to State a Claim Against Marc Correra.

In order to survive dismissal, the Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 554 (2007). A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and allegations that merely state legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). By completely failing to allege an essential element of each of the two claims brought against Marc Correra, Plaintiff has failed to meet its pleading burden.

#### a. The Complaint Does Not State a Claim for Aiding and Abetting Breach of Fiduciary Duty.

Under New Mexico law, in order to state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege (1) a fiduciary of the plaintiff breached a duty owed to the plaintiff, (2) the defendant knew of such a duty, (3) the defendant intentionally provided substantial assistance or encouragement to the fiduciary to commit an act which the defendant knew to be a breach of duty, and (4) damages to the plaintiff were caused thereby. *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 124 N.M. 186 (N.M. 1997). Glaringly absent from the Complaint is any allegation that Plaintiff actually suffered any damages as a result of the alleged breaches of fiduciary duty, and because Plaintiff has failed to allege an element of the claim, Count III of the Complaint must be dismissed. *See The Torch Liquidating Trust v. Stockstill*, 561 F.3d 377 (5th Cir. 2009) (dismissing a claim for failure to state a claim where the complaint "allege[d] no actual, quantifiable damages suffered by [Plaintiff]" and

"allege[d] only that the creditors and shareholders were misled and harmed."). *See also, Ellis v. Ogden,* 589 F.3d 1099, 1102 (10th Cir. 2009) ("If the plaintiff fails to allege an essential element of his claim, the complaint is appropriately dismissed pursuant to Rule 12(b)(6).").

The Complaint is peppered with allegations regarding fees paid by Plaintiff to various defendants, investments made by Plaintiff in funds recommended by Aldus at the alleged direction of various defendants, and claims that such investments were made with political motives. Complaint ¶¶ 57, 63, 75-92. However, the Complaint makes no allegation that any such investments resulted in actual losses to Plaintiff (or anyone else), that investments would have been made differently but-for the alleged scheme, or that had investments been made without such alleged influence, Plaintiff would have made different or better investments. While the complaint references "fees" paid by Plaintiff to various of the defendants, it does not indicate that these fees would not have been paid but for the alleged scheme, and therefore makes no allegation that those fees amount to "damages" suffered by Plaintiff. The Complaint mentions no damages or losses at all, let alone damages or losses that are traceable to an alleged breach of fiduciary duty.

The only mention of damages in the entire complaint is the wholly conclusory allegation that "[t]he Public Trust Funds and their beneficiaries have been damaged by the Aiding and Abetting Defendants' aiding and abetting Bland's, Meyer's and Aldus's breaches of their fiduciary duties." Complaint ¶104. This conclusory allegation—which merely parrots an element of the claim and is not supported by any other facts—is not enough to satisfy Plaintiff's pleading standard. *Twombly,* 550 U.S. 544 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do")

(citing *Papasan v. Allain*, 478 U.S. 265 (1986) ("although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation").)

Because Plaintiffs have alleged no damages resulting from the alleged aiding and abetting a breach of fiduciary duty by Marc Correra, Count III of the Complaint must be dismissed.

### b. The Complaint Does Not State a Claim for Unjust Enrichment.

Under New Mexico law, to state a claim for unjust enrichment, a plaintiff must show (1) that the defendant has knowingly benefitted at another's expense and (2) in such a manner that allowing that person to retain the benefit would be unjust. *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695 (N.M. 2000). Nowhere in the Complaint does Plaintiff allege that Marc Correra benefitted in such a manner that it would be unjust for him to benefit from retaining the benefit.

The Complaint includes 18 separate paragraphs under the heading "Politically-Connected Individuals' Receipt of Improper Payments." Complaint ¶¶75-92. Paragraph 76 asserts in conclusory fashion that Marc Correra, "a politically-connected individual and the son of Anthony Correra" received fees in connection with the Plaintiff's investments. Plaintiff fails to allege that there was any wrongdoing on Marc Correra's part which would make retention of any earned fees unjust. On the contrary, Plaintiff even notes in its Complaint that third-party marketers, such as Marc Correra, can serve a legitimate purpose and earn a legitimate fee acting as an intermediary between an investment management firm seeking to raise capital and an investor seeking investment opportunities. (Complaint, ¶35). Further, while Plaintiff pleads facts to show the political influence of other defendants, the

most Plaintiff has pled against Marc Correra is that he is related to his father, Anthony Correra.

As Plaintiff has pled no facts which show it would be unjust for Marc Correra to retain an fees earned as a third-party marketer concerning Plaintiff's investments, Plaintiff has not met the pleading standard. *See Vanxandt v. Oklahoma*, 276 Fed. Appx. 843, 849. (10th Cir. 2008) ("To carry their burden, plaintiffs under the *Twombly* standard must do more than generally use the collective term "defendants."); *Twombly*, 550 U.S. 544 (2007); *Papasan*, 478 U.S. 265 (1986)).

In short, the Complaint includes no allegations that Marc Correra did anything improper which would result in enrichment being "unjust" and, therefore, Count IV of the Complaint must be dismissed.

## CONCLUSION AND PRAYER.

The Complaint should be dismissed because (1) the service of the summons and complaint was deficient, and/or (2) the complaint fails to state a claim against Marc Correra. Accordingly, Defendant Marc Correra respectfully requests that the Court dismiss the Complaint with prejudice.

Dated June 30, 2011.

                                        Respectfully submitted,

                                        BREGMAN & LOMAN, P.C.

                                        Eric Loman
                                        Sam Bregman
                                        111 Lomas Blvd. NW, Suite 230
                                        Albuquerque, NM  87102
                                        Office:  (505) 761-5700
                                        Fax:  (505) 761-8280

## CERTIFICATE OF SERVICE

I hereby certify that I served at true and correct copy of the foregoing via filing with the CM/ECF system on June 30, 2011

                                        /s/
                                        Eric Loman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| THE NEW MEXICO STATE INVESTMENT COUNCIL, as Trustee, Administrator and Custodian of the LAND GRANT PERMANENT FUND and the SEVERANCE TAX PERMANENT FUND,<br><br>Plaintiff,<br><br>vs.<br><br>SAUL MEYER, RENAISSANCE PRIVATE EQUITY PARTNERS, LP d/b/a ALDUS EQUITY PARTNERS, LP, MARC CORRERA, ANTHONY CORRERA, ALFRED JACKSON, DANIEL WEINSTEIN, VICKY L. SCHIFF, JULIO RAMIREZ, BARRETT WISSMAN, WILLIAM HOWELL, MARVIN ROSEN, DANIEL HEVESI, ELLIOTT BROIDY, MILTON ROBERT CARR, and HENRY MORRIS,<br><br>Defendants. | Index No. 1:11-cv-00390-JB |

I, Marc Correra, state and declare:

1. I presently live in Paris, France at an apartment I lease at 21 Rue Galilee.

2. On June 9, 2011, FedEx delivered a mailing envelope containing the summons and complaint in this lawsuit to the *concierge* for the building where my apartment is located. This *concierge* is actually located in an office at 25 Rue Galilee, and acts generally as a shared front desk for multiple apartment buildings since it would be cost-prohibitive for each building to have its own doorman or receptionist.

3. The FedEx tracking number provided on the label of this envelope was 7948 3680 8351 0430 and the sender was identified as Anita Taylor Malone, Sunbelt Reporting

Exhibit 1

Service, 6575 West Loop South, Suit 580, Bellaire, TX, 77401. A true and correct copy of the shipping label attached to the envelope is attached hereto as Exhibit A.

4. The online tracking information for this package from fedex.com indicates that it was signed for by someone named "GERALDO" on June 9, 2011, and was delivered to the receptionist/front desk of my apartment building. A true and correct copy of the tracking information I have seen from the fedex.com website is attached as Exhibit B. I do not know who "GERALDO" is, but I believe the envelope was signed for by the shared *concierge* and was either picked up by my wife at the *concierge*'s office or given to my wife by the *concierge*. I first received the envelope when I found it lying on a table in my apartment; presumably my wife left it there for me to find.

5. There has been no other evidence of attempted service, and I had no contact with any process server, *huissier de justice*, or representative from any French governmental or diplomatic agency concerning service of process in this suit. I am aware of no other attempts by anyone to serve me with this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 30, 2011 in Paris, France.

Marc Correra

Shipping document. ▼

From: (713) 667-0763  
Anita Taylor Malone  
Sunbelt Reporting Service  
6575 West Loop South, Suite 580  

Bellaire, TX 77401  
UNITED STATES  

Origin ID: HOUA

SHIP TO: 917685O586  
**MARC CORRERA**  

**21 RUE GALILEE**  

**PARIS, 75016**  
FR

BILL SENDER

FedEx Express

Ship Date: 07JUN11  
ActWgt: 1.0 LB  
CAD: 100313060/INET3130  

REF: CORRERA  
DESC-1: Correspondence/No Customs Value  
DESC-2:  
DESC-3:  
DESC-4:  
EEI: NO EEI 30.37(a)  
COUNTRY MFG: US  
CARRIAGE VALUE: 0.00 USD  
CUSTOMS VALUE: 0.00 USD  
T/C: S 444300868  
SIGN: Anita Taylor Malone   D/T: S 444300868  
EIN/VAT:  
PKG TYPE: ENV  

TRK# 7948 3680 8351  
0430  

**NX TNFA**

A2  
INTL PRIORITY  

75016  
-FR-  
CDG  

5DDG1/00B0/EFB

These commodities, technology, or software were exported from the United States in accordance with the export administration regulations. Diversion contrary to United States law prohibited.

The Warsaw Convention may apply and will govern and in most cases limit the liability of Federal Express for loss or damage to your shipment. Subject to the conditions of the contract.

CONSIGNEE COPY - PLEASE PLACE IN POUCH

▲ Ensure document is securely attached by pouch.

Ex. A  
ALL-STATE LEGAL®





EX. B